

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-61178-CIV-HUCK/TURNOFF

PETER LETTERESE AND ASSOCIATES, INC.,
a Florida Corporation,

       Plaintiff,

vs.

WORLD INSTITUTE OF SCIENTOLOGY
ENTERPRISES INTERNATIONAL, INC.,
RELIGIOUS TECHNOLOGY CENTER, INC.,
CHURCH OF SCIENTOLOGY INTERNATIONAL,
INC., and BRIDGE PUBLICATIONS, INC., all California
corporations, CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, a Florida corporation, NEW
ERA PUBLICATIONS INTERNATIONAL, a Foreign
corporation, SCIENTOLOGY MISSIONS
INTERNATIONAL, CHURCH OF SPIRITUAL
TECHNOLOGY, CHURCH OF SCIENTOLOGY
MISSION OF FORT LAUDERDALE, INC., and
CHURCH OF SCIENTOLOGY OF FLORIDA, both
Florida corporations, and DOES 1-3200,

       Defendants.

_____ /

## DEFENDANTS WORLD INSTITUTE OF SCIENTOLOGY ENTERPRISES' AND CHURCH OF SCIENTOLOGY INTERNATIONAL'S JOINT MOTION TO DISMISS FIFTH CLAIM OF FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants World Institute of Scientology Enterprises ("WISE") and Church of Scientology International ("CSI") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice the Fifth Claim for Relief pleaded in the First Amended Complaint filed by Peter Letterese & Associates, Inc. ("PLA"), for failure to state a claim upon which relief can be granted. Federal law does not permit a claim for false designation of origin based upon an alleged misdesignation of authorship.

## INTRODUCTION

The Fifth Claim of the First Amended Complaint ("the Complaint") seeks relief from WISE for unfair competition as defined by 15 U.S.C. § 1125(a). Additionally, while CSI is not named in the heading of this claim, acts are alleged against it in the course of the claim (e.g., Complaint, ¶ 92) which may indicate some intention on the part of PLA to hold CSI liable under the statute, hence CSI's participation in this joint motion.[1] The gist of the claim is that WISE has falsely designated the origin of certain course materials that utilize works by Les Dane by stating that "[t]he materials of this course were researched and written exclusively by American philosopher-author L. Ron Hubbard" (Complaint, ¶ 92) and other similar statements, and that this will create consumer confusion.

The United States Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S. Ct. 2041 (2003), and its progeny have definitively established that no cause of action for false designation will lie for this sort of alleged "reverse passing off" when a plaintiff's communicative product has been used without crediting its author. Rather, such a Lanham Act claim only encompasses a failure to designate the geographical or production origin of tangible products. Plaintiff's Fifth Claim is thus fatally flawed as a matter of law and cannot be amended to state a valid claim. It should be dismissed with prejudice as to this or any other existing or potential defendant, including the "Does" listed in the caption of the First Amended Complaint.

---

[1] In addition to WISE, the claim is explicitly asserted against defendant Religious Technology Center ("RTC"). It also appears from the text of that claim, as quoted below, that PLA may be attempting to extend this claim to defendant Church of Spiritual Technology ("CST") as well as CSI. Undersigned counsel are informed that RTC and CST are simultaneously filing their own joinder in this motion.

## PLAINTIFF'S FIFTH CLAIM

The Fifth Claim alleges in paragraphs 91 and 92:

> 91.  The Dane Surefire book, and a substantial part of the Skills Sheets and other materials and Course, originated with Les Dane, whose exclusive rights now rest with PL&A.
>
> 92.  WISE and RTC and/or CST (or one or more of Does 1-10 who may supervise and/or collect royalties based upon the Hubbard/Scientology/Dianetics trademarks and copyrights) have, acting alone or in concert, falsely designated the origin of the Skills Sheets and other materials and Course by asserting that L. Ron Hubbard's Administrative Technology, which WISE licenses, include the materials in the WISE Course, and in particular that this is "L. Ron Hubbard's Administrative Technology" and that "The materials of this course were researched and written entirely by American Philosopher L. Ron Hubbard."  On information and belief, there are similar assertions that the materials in the CSI Course also originated with L. Ron Hubbard.

PLA contends in paragraphs 93 and 94 that these factual allegations constitute "false designation of origin, and/or reverse passing off," which are "likely to cause consumer confusion as to the origin of the Skills Sheets, Course, and/or other Course materials, and/or to falsely suggest a connection between Les Dane and/or those that own or control the rights to the Dane Surefire book, and any of Defendants."  The Complaint asks for a declaration that this conduct violates the Lanham Act, 15 U.S.C. § 1125(a), an injunction, an accounting of profits, delivery of all infringing materials and all copies of the Dane *Surefire* book, actual and/or statutory damages, attorney fees and costs.

## ARGUMENT

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides:

> (a)(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading representation of fact, which —

3

> (A) is likely to cause confusion, or to cause mistake, or to deceive
> as to the affiliation, connection, or association of such person with
> another person, or as to the origin, sponsorship, or approval of his
> or her goods, services, or commercial activities by another person
> ... shall be liable in a civil action by any person who believes that
> he or she is or is likely to be damaged by such act.

PLA claims that WISE, RTC, and various Does are violating the Lanham Act because WISE represents in its Course materials — which are attached as Exhibit G to the Complaint and do not include the Dane book — that they were researched and written by L. Ron Hubbard, when, in fact, they are based on the works of Les Dane. (Complaint, ¶¶ 92-94.) That claim is barred by the Supreme Court's *Dastar* decision and subsequent case law applying that decision to Lanham Act claims.

In *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S. Ct. 2041 (2003), the Supreme Court considered a false designation of origin claim and rejected any possibility of a Lanham Act claim for failure to attribute ownership or authorship. Fox owned the television rights to a World War II book by Dwight D. Eisenhower and a television series, "Crusade in Europe," based on that book. Fox did not renew the copyright in the television series, but it later reacquired the television rights in the book, including the right to sub-license the distribution of the Crusade series, which it did. Fox alleged that Dastar released a video set entitled "World War II Campaigns in Europe," which Dastar made from the original "Crusade in Europe" series without giving credit to Fox, the book, the Crusade television series, or the video set put out by Fox's licensee. Instead, Fox labeled the video series as produced and distributed by a company that it owned. *Id.* at 23, 123 S. Ct. at 2042.

The District Court for the Central District of California granted summary judgment for Fox on its Lanham Act and copyright claims, and the Ninth Circuit Court of Appeals affirmed.

4

With respect to the Lanham Act claim, the Supreme Court reversed.[2] The Court explained that the Lanham Act was not designed to protect originality or creativity, as those topics are contemplated by copyright and patent law:

> In sum, reading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."

*Id.* at 37, 123 S. Ct. at 2050 (emphasis in original); *see id.* at 31-32, 123 S. Ct. at 2047 ("We think the most natural understanding of the 'origin' of 'goods' — the source of the wares — is the producer of the tangible product sold in the marketplace.... [A]s used in the Lanham Act, the phrase 'origin of goods' is in our view incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent.")

Finding that Dastar was the producer of the goods offered for sale, and its representation was therefore true, the Court dismissed Fox's claim of reverse passing off under section 43(a) of the Lanham Act. *Id.* at 38, 123 S. Ct. at 2050. The Court also expressed doubt that the Lanham Act was ever intended to remedy false statements about origin of "communicative product." *Id.* at 33, 36, 123 S. Ct. at 2048, 2049.

Following the *Dastar* decision, numerous courts have applied its holding to situations where Lanham act claims were asserted with respect to works that were protected by copyright. In *Zyla v. Wadsworth, Div. Thomson Corp.*, 360 F.3d 243 (1st Cir. 2004), the plaintiff sued a co-

---

[2] The copyright infringement claim was not before the Supreme Court, as the Ninth Circuit had reversed and remanded that claim to the district court. *Dastar*, 539 U.S. at 28 n.2, 123 S. Ct. at 2045 n.2.

author over the fourth edition of a copyrighted textbook which included material she had contributed to earlier editions, but without any attribution of her work. The court dismissed the plaintiff's Lanham Act claim, holding that her allegation that the failure to attribute her with any authorship of the book was likely to cause confusion as to its authorship was barred by *Dastar*. *Id*. at 252.

Likewise, in *Williams v. UMG Recordings, Inc.*, 281 F.Supp.2d 1177 (C.D. Cal. 2003), the court dismissed a plaintiff's Lanham Act claim that defendants failed to list his name in the credits of a film that he allegedly had re-edited and rescored and for which he had supplied a narration script:

> Under *Dastar* ... the Supreme Court specifically held that the phrase "origin of goods" "refers to the producer of tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." [...] As such, Plaintiff would have a claim if Defendants purchased copies of Plaintiff's goods (i.e. the film) and repackaged them as their own. By contrast, *Plaintiff does not have a [Lanham Act] claim for his authorship and direction embodied in that film. His claim, therefore, is barred as a matter of law*....
>
> The "goods" are the defendants', not the plaintiff's. *Dastar* makes clear that a claim that a defendant's failure to credit the plaintiff on the defendant's goods is actionable only where the defendant literally repackages the plaintiff's goods and sells them as the defendant's own — not where, as here, Defendants are accused only of failing to identify someone who contributed not goods, but ideas or communications (or, for that matter, "services") to Defendants' product.

*Id.* at 1183-84 (citations omitted; emphasis added.) In *Williams*, the court found that "in *Dastar*, the defendant did exactly what Plaintiff accuses Defendants of doing [in *Williams*] — attributing to itself and its employees various 'services' that the plaintiffs claimed they, in fact, provided on the defendant's videotapes," but the Supreme Court in *Dastar* had held such a claim to be non-actionable under the Lanham Act. *Id*. at 1184. The *Williams* court expressly rejected the

6

plaintiff's argument that *Dastar* was premised on the lack of copyright protection for the underlying work in that case. *See id*. at 1185.

Similar results have obtained in numerous other post-*Dastar* Lanham Act cases. *See Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1218 (E.D. Cal. 2004) (Lanham Act reverse passing off claim as to architectural plans owned by plaintiff and copied by defendant dismissed because claim was based on communicative acts, not tangible products); *Smith v. New Line Cinema*, 2004 WL 2049232, *3-5 (S.D.N.Y. 2004) (dismissing Lanham Act reverse passing off claim by author of original screenplay alleging motion picture company appropriated author's screenplay and did not credit author, despite fact that plaintiff possibly had a valid copyright claim); *Bob Creeden & Assoc., Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 879 (N.D. Ill. 2004) (rejecting Lanham Act reverse passing off claim that the defendant had marketed and sold a software system derived from plaintiff's system, but gave a "false impression to potential and actual customers that the system was its own"); *Larkin Group, Inc. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121, 1126-27 (D. Kan. 2004) (rejecting Lanham Act claim that defendants incorporated plaintiff's materials into a proposal without credit, stating "[e]ven if plaintiff authored some of the ideas and concepts embodied in [defendants'] proposal, the Lanham Act does not provide protection for such plagiarism"); *Tao of Systems Integration, Inc. v. Analytical Services & Materials, Inc.*, 299 F. Supp. 2d 565, 572 (E.D. Va. 2004) (Lanham Act reverse passing off claim based on plaintiff's use of defendant's ideas or concepts as plaintiff's own dismissed pursuant to *Dastar*); *Carroll v. Kahn*, 2003 WL 22327299, *6 (S.D.N.Y. 2003) ("*Dastar* makes clear that a claim that a defendant's failure to credit the plaintiff on the defendant's goods is actionable only where the defendant literally repackages the plaintiff's goods and sells them as the defendant's own — not where ... [d]efendants are accused only of

failing to identify someone who contributed ... ideas or communications ... to [d]efendants' product."); *Boston Int'l Music, Inc. v. Austin*, 2003 WL 22119228, *2 (D. Mass. 2003) (dismissing without leave to amend Lanham Act claim for use of plaintiff's composition without credit to plaintiff; granting leave to amend copyright claim).

Like the Lanham Act claims that were dismissed in these cases, PLA's Fifth Claim is similarly defective. PLA has not alleged that WISE takes physical copies of the Dane book published by someone else and repackages them with the name of a different publisher, nor could it do so because WISE does not sell Dane books at all. Rather, people who buy WISE's course use an original of the Dane book purchased elsewhere when they take the course. What PLA is alleging is that a statement was made in WISE's checksheet for a sales course and that the statement incorrectly attributed all of the materials of the course to L. Ron Hubbard. Even if this allegation were true (which WISE denies), such a statement by WISE would not constitute a misdesignation of the source of a tangible item. Accordingly, PLA fails to state a claim under the Lanham Act, as explained by *Dastar* and its progeny.

## CONCLUSION

Plaintiff's Lanham Act allegation is the same as that which was rejected in *Dastar* and each of the post-*Dastar* cases cited above. WISE was the originator of its materials, and even if it did not credit Les Dane as the author of a work used in the course,[3] such an act cannot form the basis for a Lanham Act claim after *Dastar*. Therefore, Plaintiff's Lanham Act claim is not cognizable, and the Fifth Claim for Relief should be dismissed with prejudice to asserting it again against any party.

*February 28, 2005*

---

[3] Of course, WISE and CSI do not concede that, even absent *Dastar*, Plaintiff could make a sufficient showing to prevail on such a claim.

8

Respectfully submitted,

| | |
|---|---|
| *s/. Thomas Meeks* | *s/. Helena Kobrin* |
| Thomas Meeks, Esq. | Helena K. Kobrin, Esq. |
| Fla. Bar No. 314323 | Fla. Bar No. 0259713 |
| **ZUCKERMAN SPAEDER LLP** | **MOXON & KOBRIN** |
| Miami Center, Suite 900 | 3055 Wilshire Blvd., Suite 900 |
| 201 So. Biscayne Boulevard | Los Angeles, California 90010 |
| Miami, Florida 33131-4326 | Telephone: (213) 487-4468 |
| Telephone: (305) 358-5000 | Facsimile: (213) 487-5385 |
| Facsimile: (305) 579-9749 | |

.

*Attorneys for Defendants*
*World Institute of Scientology Enterprises and*
*Church of Scientology International*

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by mail, this 28th day of February, 2005, on counsel for plaintiff: Dale Paul DiMaggio, Esq., Malin Haley & DiMaggio, 1936 S. Andrews Avenue, Fort Lauderdale, Florida 33316, and David L. Hoffman, Esq., Law Offices, 27023 McBean Parkway, Suite 422, Valencia, California 91355; and on counsel for Religious Technology Center and the Church of Spiritual Technology: Michael Nachwalter, Esq., Kenny Nachwalter, P.A., 1100 Miami Center, 201 South Biscayne Blvd., Miami, Florida 33131.

*s/. Thomas Meeks*
Thomas Meeks