UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-61178-CIV-HUCK

PETER LETTERESE AND
ASSOCIATES, INC.,
a Florida corporation,

        Plaintiff,

vs.

WORLD INSTITUTE OF SCIENTOLOGY
ENTERPRISES INTERNATIONAL, INC.,  RELIGIOUS
TECHNOLOGY CENTER, INC., CHURCH OF
SCIENTOLOGY INTERNATIONAL, INC., and BRIDGE
PUBLICATIONS INCORPORATED, all California
corporations, CHURCH OF SCIENTOLOGY FLAG
SERVICE ORGANIZATION, a Florida corporation, NEW
ERA PUBLICATIONS INTERNATIONAL, a foreign
corporation, CHURCH OF SCIENTOLOGY MISSION OF
FORT LAUDERDALE, INC., AND CHURCH OF
SCIENTOLOGY OF FLORIDA, both Florida corporations,
SCIENTOLOGY MISSIONS INTERNATIONAL, INC.,
CHURCH OF SPIRITUAL TECHNOLOGY and DOES 1-
3200,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## PLAINTIFF PETER LETTERESE AND ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF EXCLUSIVE RIGHTS AND COPYRIGHT INFRINGEMENT, AND INCORPORATED MEMORANDUM OF LAW



## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii-iv

I.    UNDISPUTED FACTS SUPPORTING SUMMARY
      JUDGMENT OF EXCLUSIVE RIGHTS AND
      PRECLUDING ANY CHALLENGE THERETO
      INCLUDE DEFENDANTS' MOTION FOR
      ABATEMENT AND BRIDGE'S ADMISSION OF
      PL&A'S RIGHTS BY THE PROPOSED ASSIGNMENT        5

A.    Defendants' Voluntarily Moved This Court For An
      Abatement To Negotiate With PL&A Which Presupposes
      PL&A's Authority To Resolve The Matter. ....                5

B.    Defendant BRIDGE Inherently Acknowledged That PL&A
      Has Exclusive Rights and That the Entities Affiliated With
      the Scientology Religion Do Not Have Any Rights When
      BRIDGE Presented the Dane Family With a Proposed
      Agreement to Assign the Dane Rights Under the Exclusive
      License with PL&A When BRIDGE Admitted the Facts Re
      the Proposed Agreement. ....................................              9

II.   WHERE THE SALES BOOK IS PROVIDED AS PART
      OF A COURSE CONTAINING MATERIALS THAT ARE
      BASED ON THE BOOK, THE "STUDENT" IS
      DIRECTED BY THE MATERIALS WHAT PORTIONS
      OF THE BOOK TO READ, AND THERE ARE DRILLS
      BASED ON MATERIAL FROM THE BOOK, THAT IS A
      DERIVATIVE WORK.........................................            10

III.  STANDARDS FOR SUMMARY JUDGMENT IN A
      COYRIGHT ACTION .........................................           11

IV.   DEFENDANTS ASKED FOR AND RECEIVED THE
      BENEFIT OF ABATEMENT AND NEGOTIATION
      WITH THE PLAINTIFF PL&A, AND THEREFORE ARE
      ESTOPPED FROM ASSERTING ANY DEFENSES
      RELATED TO STANDING, OWNERSHIP AND
      EXCLUSIVE RIGHTS.........................................           12

A.    Estoppel arises here where Defendants Moved for
      Abatement Acting as if the February 27, 2004 Letter were
      Valid and PL&A was the Proper Party to Negotiate with,
      the Court Granted Abatement, and PL&A had to Wait to
      Continue Prosecuting this action......................           12

B. PL&A owns the Exclusive Rights In a Valid Copyright ........................................ 14

C. Defendants' Courses on the Sales Book Infringe By Transforming the Sales Book Into a Course. ... ...................... 15

D. The first sale defense, 17 U.S.C. §109(a), does not apply to a derivative work................................................. 20

V. CONCLUSION........................................................ 21

CERTIFICATE OF SERVICE ..................................... 22

# TABLE OF AUTHORITIES

## CASES

Addison-Wesley Publishing Company, Inc. v. Brown,
    223 F. Supp. 219 (E.D. NY 1963) ............................................................ 17, 19

Allison v. Vintage Sports Plaques
    136 F.3d 1443 (11th Cir. 1998) ................................................................... 19

Bateman v. Mnemonics, Inc.
    79 F.3d 1532, 1541 (11th Cir. 1996) ............................................................. 11

Blum v. Bankatlantic Financial Corp.
    925 F.2d 1357, 1363 (11th Cir., 1991) ..................................................... 12, 13

Castle Rock Entertainment v. Carol Publishing Group, Inc.
    955 F. Supp. 260, 274 (S.D.N.Y. 1997), affirmed, 150 F.3d 132 (2d Cir. 1998)......... 20

Greenwich Workshop, Inc. v. Timber Creations, Inc.
    932 F. Supp. 1210 (C.D. Cal. 1996) ............................................................. 18

Kohlheim v. Glynn County
    915 F.2d 1473, 1476 (11th Cir., 1990). ......................................................... 11

Lee v. Deck the Walls, Inc.
    925 F. Supp. 576, 580-581 (N.D. Ill. 1996)..................................................... 18

Mirage Editions, Inc. v. Albuquerque A.R.T. Co.
    856 F.2d 1341 (9th Cir. 1988) ..................................................................... 17

Montgomery v. Noga
    168 F.3d 1282, 1290 (11th Cir., 1999). .................................................... 11, 16

Munoz v. Albuquerque A.R.T. Co.
    829 F. Supp. 309 (D. Alaska 1993) ............................................................... 18

Paramount Pictures Corp. v. Video Broadcasting Systems, Inc.
    724 F. Supp. 808, 821 (D.Ks. 1989) ............................................................. 18

Peker v. Masters Collection
    96 F. Supp. 2d 216, 220 (E.D.N.Y. 2000) ....................................................... 18

Precious Moments, Inc. v. La Infantil, Inc.
    971 F. Supp. 66 (Dist.P.R. 1997).................................................................. 18

<u>SunTrust Bank v. Houghton Mifflin Co</u>.
   268 F.3d 1257, 1261-1262 (11th Cir., 2001) ................................................................ 12

<u>Twentieth Century Fox Film Corp. v. Marvel Enters</u>.
   155 F. Supp. 2d 1 (S.D.N.Y. 2001) ............................................................................ 18

<u>United Artists Television, Inc. v. Fortnightly Corp</u>.
   377 F.2d 872, 882 (2d Cir. 1967) ............................................................................... 20


**Statutes**

17 U.S.C. § 410(c) (1994) ................................................................................................. 11

17 U.S.C. § 501(a) (1994) ................................................................................................. 12

17 U.S.C. §101 ................................................................................................................... 16

17 U.S.C. §106(2). ............................................................................................................. 15

17 U.S.C. §106(3) .............................................................................................................. 20

17 U.S.C. §109(a) .............................................................................................................. 20

17 U.S.C. §411 ................................................................................................................... 11

17 U.S.C. §501(b) .............................................................................................................. 14


**Rules**

FRCP 56 ........................................................................................................................ 2, 11

FRCP 56(c). ....................................................................................................................... 11

PLAINTIFF PETER LETTERESE AND ASSOCIATES, INC. ("PL&A") moves for summary judgment under FRCP[1] 56 as follows:

1.       For an order that Plaintiff PL&A holds the exclusive rights to the copyrights and trademarks of Les Dane's literary works, that Defendants' cannot challenge those rights, and that Defendants are unauthorized regarding any such rights; and

2.       For an order that any and all courses taught by any of Defendants where the student is provided with the book by Les Dane entitled <u>Big League Sales Closing Techniques</u> (aka <u>Surefire Sales Closing Techniques</u> and <u>Effective Sales Closing Techniques</u>, and hereinafter "Sales book" or "BLS book"), in conjunction with written materials produced, published, executed and licensed to others by the Defendants called "checksheets" which direct the student (who studies on the premises of each and any of the defendants to portions of the Sales book to read and which include "skills drills" (practical exercises in which each *student* and an accompanying *coach* to simulate sales scenarios from the Sales book), are an infringing derivative work of Plaintiff's exclusive rights in the Sales book.

Specifically, PL&A moves for an order that for purposes of this case, that Defendants cannot challenge …

A.   … underlying copyright ownership by Lois B. Dane (of the Dane Estate on behalf of the deceased author) or

B.   … standing of PL&A as the beneficial copyright owner since 1993-1994 and through the year 2045 to bring this action,

---

[1] FRCP refers to Federal Rule of Civil Procedure

C. ... the exclusive rights of PL&A,

D. ... the lack of authority of any kind, of Defendants (including but not limited to lack of implied license), or any other challenge on that basis for <u>Two Reasons</u>, each one individually sufficient in itself.

An order precluding Defendants from making any challenge on issues A to D above is supported for <u>two</u> <u>reasons</u>, each one individually sufficient in itself:

<u>First, Defendants' specifically moved this Court for an abatement of this case to negotiate with PL&A, and the case was in fact abated by the Court for such negotiation</u>. Defendants never expressed any doubt before the court on January 6th as to whether PL&A was the correct party with which to negotiate.

Second, Defendants are also precluded from challenging PL&A's exclusive right to bring this action because, in a prior case with PL&A, <u>Defendant BRIDGE admitted that PL&A had an exclusive license with the Dane family</u> and BRIDGE further admitted that it approached the Dane family with a proposed agreement in 2003 to acquire the Dane family rights under the PL&A exclusive license agreement.

<u>The first portion of this summary judgment motion is relevant to counts I to V of the First Amended Complaint.</u>[2]

Second, Defendants are also precluded from challenging PL&A's exclusive right to bring this action because, in a prior case with PL&A, <u>Defendant BRIDGE admitted that PL&A had an exclusive license</u> and BRIDGE further admitted that it approached the Dane family with a proposed agreement in 2003 to acquire the Dane family rights under

---

[2] And to counts I to IV of any subsequent amended complaint.

the PL&A exclusive license agreement. <u>The first portion of summary judgment motion is relevant to counts I to V of the First Amended Complaint</u>[3]

In the second portion, PL&A moves for summary judgment on the issue of copyright infringement as expressed in counts II and IV of the complaint, where the Sales book is provided as part of a course containing materials that are based on the book, the "student" is directed by the materials as to what portions of the book to read, and the "student" participates in simulating with a "coach" scenarios based on material from the Sales book.

This partial summary judgment motion will simplify discovery:

1. Will simplify discovery,

2. Will simplify the issues, and

3. Will facilitate staying on schedule for a September trial date.

Moreover, one part of the motion is based on application of estoppel and admissions principles applied to the indisputable facts of Court documents filed in this case (the motion to abate) and what was admitted in court in a prior case (the PL&A contract being valid and BRIDGE seeking an assignment of the Dane Family rights under that contract). The remainder of this summary judgment motion is based on the legal determination that the multiple "Scientology courses" which make use of the Sales book are derivative works, violating one or more exclusive rights under 17 U.S.C. 106(a) other than the right of distribution and thus rendering the first sale defense inapplicable.[4]

---

[3] And to counts I to V of any subsequent amended complaint.
[4] Under 17 U.S.C. §106, there are five exclusive rights of the copyright holder. One is the right to distribute (e.g., sell copies). 17 U.S.C. §106(3). Another is the right to create derivative works. 17 U.S.C. §106(2). Under the first sale defense of 17 U.S.C. §109(a), if one buys a book from the copyright holder, one can resell it without violating 17 U.S.C. §106(3). It is evident from 17 U.S.C. §109(a) and well-settled copyright law that the first sale defense only applies to the right to distribute, but is not a defense to

Further, no comparison of lines, words, selection, organization or otherwise need be done under Counts II and IV of the complaint and in the context of this motion.  The reader can simply review the cheeksheets and skills drills for the courses and see the undeniable entangling of the materials with the Sales book, making the courses a derivative work.

Resolution of the legal issues involved will also help to promote settlement.

### I. UNDISPUTED FACTS SUPPORTING SUMMARY JUDGMENT OF EXCLUSIVE RIGHTS AND PRECLUDING ANY CHALLENGE THERETO INCLUDE DEFENDANTS' MOTION FOR ABATEMENT AND BRIDGE'S ADMISSION OF PL&A'S RIGHTS BY THE PROPOSED ASSIGNMENT

#### A.     Defendants' Voluntarily Moved This Court For An Abatement To Negotiate With PL&A Which Presupposes PL&A's Authority To Resolve The Matter.

Defendants World Institute of Scientology Enterprises, Inc. ("WISE"), Bridge Publications, Inc. ("BRIDGE"), Church of Scientology Flag Service Organization ("FLAG"), Church of Scientology Mission of Fort Lauderdale, Inc. ("MISSION FtL"), and Church of Scientology of Florida ("FLORIDA CoS") moved for abatement and Defendant Religious Technology Center ("RTC") joined that motion all on or about December 28, 2004 (collectively, "Abatement Requesting Defendants").  Hoffman Decl., ¶11.  The Court held a hearing on January 6, 2005 and thereafter ordered the case abated until February 28, 2005 for mediation.  Hoffman Decl., ¶12.

Defendant Church of Scientology International, Inc. ("CSI") was served prior to the January 6, 2005 motion to abate.  Defendants Church of Spiritual Technology ("CST") and Scientology Missions International, Inc. ("SMI") were served after the

---

violating the right to create a derivative work or any other right in 17 U.S.C. §106.  Red Baron-Franklin Park, Inc. et al v. Taito Corporation, 883 F.2d 275, 280 (4th Cir. 1989) (Defendant who purchased electronic microprocessor controller from copyright holder and only put the controller inside the intended arcade video machine so that customers could play an arcade video game, infringed right of performance even if controller itself was an authorized purchase, and even though the game as embodied in the controller was not changed or copied).

motion to abate, but before the mediation.  CSI, CST and SMI took advantage of the abatement and have attended  and participated in the ongoing mediation, the first meeting of which was on February 11, 2005.  Hoffman Decl., ¶13.

In late 1993/early 1994, PL&A acquired by written contract exclusive rights in all literary works of the late author Les Dane executed by Ms. Lois B. Dane (and all the children of Les Dane), and by PL&A, including the right (and duty) of enforcement (see Sections 1, 9 and the signature pages).  Subsequently, the agreement was recorded with the copyright office.  Hoffman Decl., Ex. A.  Ms. Lois B. Dane, Les Dane's widow, also executed a special power of attorney to Mr. Letterese on or about January 31, 1994 to help PL&A carryout the exclusive license.  Hoffman Decl. ¶2.

On or about January 4, 1999, the copyright office issued a renewal certificate of the Les Dane Sales book in the name of PL&A.  Hoffman Decl., ¶3, Ex. B.

In May 2003, PL&A brought suit against BRIDGE for interference with the written contract and other causes.  Hoffman Decl., ¶4.  In that case, BRIDGE admitted in opposing a motion for summary judgment that PL&A has an exclusive license from the Dane family and that in January 2001 BRIDGE sent an agent named Middleton to the Dane family presenting a proposed agreement for an assignment of all the Dane's rights under the "PLA Agreement":

>    On January 21, 2003, Michael Middleton [an agent of defendant
>    BRIDGE PUBLICATIONS, INC. (hereinafter "BRIDGE")] told Ms. Richter
>    (Lois' daughter) that BRIDGE "wanted to purchase the rights that 'she and
>    her family possess under the agreement with Mr. LETTERESE.'"

***

{Item 4 of the Agreement reads:}  4.  The Dane Parties assign to Bridge all of

their rights under the PLA Agreement for the life of the PLA Agreement.

Hoffman Decl., ¶18, Ex. L; see also Hoffman Decl., ¶19, Ex. M.  (Square brackets in

original; language bracketed by "{" and " }" added).

PL&A had, for some time, been negotiating or trying to negotiate with

Scientology entities with respect to what it considered infringement of its exclusive

rights.  On or about January 27, 2004, attorney David Schindler sent a letter to PL&A

attorney Richard Marcus, asserting that Mr. Schindler had been retained by Bridge, CSI

and WISE to negotiate.  Hoffman Decl., ¶5, Ex. C.

On February 13, 2004, Peter Letterese from Florida and Tom Karas from

Michigan, principals in PL&A, and California attorneys Marcus and Hoffman, met in

Florida with attorney Schindler to negotiate concerning PL&A's allegations that all or

virtually all Scientology entities infringed PL&A's exclusive rights.  PL&A sought a deal

which was with all Scientology entities.  Mr. Schindler indicated that he could negotiate

for all.  Hoffman Decl., ¶6.

On February 27, 2004, attorney Schindler sent a letter containing terms of a

potential negotiation agreement (concerning the rights to the Sales book) to be

countersigned by Mr. Marcus, which Mr. Marcus signed.   Hoffman Decl., ¶7, Ex. D.

On April 8, 2004, PL&A brought a declaratory judgment action in Superior Court

in Los Angeles, California, case no. PC034730, and PL&A amended the complaint to

name BRIDGE, WISE and CSI as defendants.  Hoffman Decl., ¶8.

In the California declaratory judgment action, PL&A sought a declaration that the

February 27, 2004 letter was nothing more than a letter, or in the alternative, it was a

binding agreement with all entities affiliated with the Church of Scientology, according to the plain meaning of item 2 that "[t]he parties includ[e] "any entity affiliated with the Church of Scientology" and consistent with previous negotiations and correspondence. Hoffman Decl., ¶9.

In the California action, Defendants CSI and BRIDGE insisted that the letter of February 27, 2004 was a binding agreement, and submitted a declaration of David Schindler in support thereof. Hoffman Decl., ¶10, Ex. E. Mr. Schindler expressly stated that he was authorized to negotiate by CSI, BRIDGE and WISE on behalf of all Scientology entities:

> 14.    The Church of Scientology International, Inc. (the "Mother Church"), BRIDGE PUBLICATIONS, INC. (the publishing arm of Scientology) and W.I.S.E., the three defendants in this second action pending before this Court, authorized me to negotiate the standstill agreement [Feb. 27, 2004 letter] on behalf of all entities affiliated with Scientology.

Hoffman Decl., ¶10, Ex. E (Schindler decl., ¶14) (bracketed material in original).

In the subject action, after a number of defendants were served, all the defendants served as of December 28, 2004 made or joined in a motion to "abate" the case for one year, or at least until February 28, 2005. Defendants asserted that the February 27, 2005 letter submitted with Mr. Schindler's declaration was a binding agreement. Hoffman Decl., ¶11, Ex. F. The Court ordered abatement until February 28, 2005, and all parties met for mediation in accordance with the Court Order on February 11, 2005. Hoffman Decl., ¶12, Ex. G. PL&A requested cancellation of the mediation and the Defendants opposed. The Court maintained the mediation and abatement. Id.

B. <u>Defendant BRIDGE Inherently Acknowledged That PL&A Has Exclusive Rights and That the Entities Affiliated With the Scientology Religion Do Not Have Any Rights When BRIDGE Presented the Dane Family With a Proposed Agreement to Assign the Dane Rights Under the Exclusive License with PL&A When BRIDGE Admitted the Facts Re the Proposed Agreement.</u>

In January of 2003, BRIDGE sent an investigator named Middleton to present Lois Dane Richter with a draft agreement assigning the Dane family's rights in the 1993 exclusive license between the Dane family and PL&A of copyrights and trademarks of Les Dane including the rights in the Sales book. Hoffman Decl., ¶s 18-19, see also ¶4. BRIDGE's admission that it sent Middleton is <u>an indisputable fact</u>:

> On January 21, 2003, Michael Middleton [an agent of defendant BRIDGE PUBLICATIONS, INC. (hereinafter "BRIDGE")] told Ms. Richter (Lois' daughter) that BRIDGE "wanted to purchase the rights that 'she and her family possess under the agreement with Mr. LETTERESE.'"
>
> ***
>
> [Item 4 of the proposed agreement reads:]  4. The Dane Parties assign to Bridge all of their rights under the PLA Agreement for the life of the PLA Agreement.

Hoffman Decl., ¶18 (see also the proposed agreement, ¶19 and Ex. M)  BRIDGE is one of the three specifically identified parties (BRIDGE, WISE and CSI) on whose behalf Mr. Schindler admits he sent the February 27, 2004 negotiation terms letter. Hoffman Decl., ¶10, Ex. E.  All the current Defendants are affiliated with the Scientology religion (by contracts involving royalty payments, by trademark usage and/or other ways), so all are bound by BRIDGE's admission. Hoffman Decl., ¶20.  All Defendants are Scientology entities according to the Scientology handbook and web site, and the 1993 agreement with the IRS. Hoffman Decl., ¶21, Ex. O.  All Defendants herein are also

bound by BRIDGE's admission as having moved the Court for Abatement and/or taken advantage of the abatement and participated in the mediation.[5]

## II.  WHERE THE SALES BOOK IS PROVIDED AS PART OF A COURSE CONTAINING MATERIALS THAT ARE BASED ON THE BOOK, THE "STUDENT" IS DIRECTED BY THE MATERIALS WHAT PORTIONS OF THE BOOK TO READ, AND THERE ARE DRILLS BASED ON MATERIAL FROM THE BOOK, THAT IS A DERIVATIVE WORK

Defendant WISE provides materials known as "checksheets" (a list of all steps of a course) including (intensive use of) "skills drills" along and for use with the Sales book, for the WISE Sales Course.  The student and coach play act various skills drills.  The cheeksheet is consumable.  Even a cursory review of Exhibit H shows that the student is interactively led through the Sales book, with various comments, annotations and adaptations about the Sales book's text.  Hoffman Decl., ¶14, Ex. H.

One or more of Defendants WISE, CSI, SMI, FLAG, MISSION FtL, FLORIDA CoS, and BRIDGE provide materials known as "checksheets and skills drills", along and for use with the Sales book, for a course known as the "Organization Executive Course." The student and coach play act various skills drills.  The checksheet is consumable. Even a cursory review of Exhibit H shows that the student is interactively led through the Sales book, with various comments, annotations and adaptations about the Sales book's text. Hoffman Decl., ¶15, Ex. I.

One or more of Defendants WISE, CSI, SMI, FLAG, MISSION FtL, FLORIDA CoS, and BRIDGE provide materials known as "checksheets and skills drills", along with and for use with the Sales book, for a course known as the Professional Registration Course ("Registrars' Course").  The student and coach play simulate selling problems and their solutions using various skills drills.  The checksheet is consumable.  Even a cursory review of Exhibit H shows that the student is interactively led through the Sales

---

[5] Hoffman Decl., ¶19, Ex. M (last page of proposed agreement lists "Effective Sales Closing Techniques", aka the Sales Book).

book, with various comments, annotations and adaptations about the Sales book's text. Hoffman Decl., ¶16, Ex. J.

L. Ron Hubbard's Executive Directive of July 5, 1974 as reissued October 22, 1982, sets forth how the Sales book is to be used and incorporated into several courses. Hoffman Decl., ¶17, Ex K.

## III. <u>STANDARDS FOR SUMMARY JUDGMENT IN A COYRIGHT ACTION</u>

**In a motion for summary judgment under FRCP 56, the moving party is entitled to summary judgment when there are no genuine issues as to the material facts, and the law as applied to such undisputed material facts dictates that the movant wins.** FRCP 56(c). The reviewing court must view all evidence in the light most favorable to the non-movant and resolve all reasonable doubts about the facts in favor of the non-movant. <u>Kohlheim v. Glynn County</u>, 915 F.2d 1473, 1476 (11th Cir., 1990).

The plaintiff in a copyright infringement action normally bears the burden of proving ownership or exclusive rights under 17 U.S.C. §411. The plaintiff must also show validity of the copyrighted work, i.e., that the work is original and that the applicable statutory formalities were followed. <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1289 (11th Cir., 1999); see <u>Bateman v. Mnemonics, Inc.</u>, 79 F.3d 1532, 1541 (11th Cir. 1996). A certificate of copyright registration for the work creates a rebuttable presumption that there is a valid copyright. 17 U.S.C. § 410(c) (1994). Registration thus shifts the burden to the non-movant to prove that the copyrighted work is unprotectable. <u>Bateman v. Mnemonics, Inc.</u>, 79 F.3d at 1541.

With regard to the requirement of originality, all that must be shown is that the work have at least some minimal degree of creativity, and even a slight amount will

suffice. Montgomery v. Noga, 168 F.3d 1282, 1290 (11th Cir., 1999).

Infringement may be shown by a violation of any of the exclusive rights of the

copyright holder, including any rights under 17 U.S.C. §106(a).  17 U.S.C. § 501(a)

(1994) ("Anyone who violates any of the exclusive rights of the copyright owner as

provided by sections 106 through 118 . . . is an infringer of the copyright . . . .");

Montgomery v. Noga, 168 F.3d 1282, 1292 (11th Cir., 1999).

SunTrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1261-1262 (11th Cir.,

2001) Copyright infringement requires "substantial similarity" in combination with

access to the original work.

## IV.  DEFENDANTS ASKED FOR AND RECEIVED THE BENEFIT OF ABATEMENT AND NEGOTIATION WITH THE PLAINTIFF PL&A, AND THEREFORE ARE ESTOPPED FROM ASSERTING ANY DEFENSES RELATED TO STANDING, OWNERSHIP AND EXCLUSIVE RIGHTS

### A.  Estoppel arises here where Defendants Moved for Abatement Acting as if the February 27, 2004 Letter were Valid and PL&A was the Proper Party to Negotiate with, the Court Granted Abatement, and PL&A had to Wait to Continue Prosecuting this action.

A party's actions in litigation, which result in the Court acting thereon, will estop

the party from taking later different actions. Blum v. Bankatlantic Financial Corp., 925

F.2d 1357, 1363 (11th Cir., 1991).  In Blum, a party BAFCO supported notice to class of

shareholders by sending notice to brokerage houses with instructions to forward the

notices.  Subsequently, there was evidence that certain class members did not get notice.

BAFCO wanted to appeal the final notice order.  The Eleventh Circuit held that because

BAFCO did not propose other notice options at the time notices were sent, and in fact

supported the forwarding notice plan, BAFCO was now estopped, absent concrete

evidence of harm, from claiming that the final notice order caused BAFCO irreparable

harm to it sufficient to establish interlocutory appealability. <u>Blum v. Bankatlantic</u> <u>Financial Corp.</u>, 925 F.2d 1357, 1363 (11th Cir., 1991).

Here, the Defendants moved this Court for an abatement based on a purported agreement of February 27, 2004, asking for time for negotiation with PL&A to resolve the dispute. The Court granted abatement to February 28, 2005 and ordered mediation. The parties mediated, with all Defendants attending the mediation. PL&A could not prosecute the action during the abatement. Defendants did not have to file an answer or otherwise plead until February 28, 2005. All Defendants took advantage of the abatement and mediation. Hoffman Decl., ¶s 11-13, Exs. F and G.

Given Defendants' motion to abate in order to negotiate with PL&A, Defendants' had to believe that PL&A has exclusive rights in the Sales book. Why would Defendants' move to abate if they did not believe that PL&A held such exclusive rights?[6] Accordingly, Defendants must now be estopped from asserting any defenses challenging PL&A's exclusive rights in the Sales book or otherwise challenging PL&A's standing to bring this action.

The defenses relating to standing and exclusive rights are set forth in all nine answers by all nine served defendants and include the following:

1. Affirmative defense no. 1 is that PL&A lacks standing to bring this action on
   behalf of the copyright owner.

---

[6] If Defendants did not believe it, then their actions, e.g., in January 2003 (attempted purchase of Danes rights), February 2004 (negotiation with PL&A and insistence that letter of February 27, 2004 was a binding negotiation agreement), and 2005 (motion to abate) were all a façade, and the out of court attack on PL&A's business (documented in the Affidavit of David L. Hoffman submitted with PL&A's opposition to the motion to abate) was a religiously discriminatory vendetta.

2.  Affirmative defense no. 2 is that PL&A lacks standing to bring this action on behalf of itself.

3.  Affirmative defense no. 15 is that PL&A failed to name an indispensable party or indispensable parties.

4.  Affirmative defense no. 16 is that PL&A failed to give notice pursuant to 17 U.S.C. §501(b) of the Copyright Act (authorizing the Court to order notice to potentially interested parties, rather than requiring Plaintiff to send such notice).

B.   <u>PL&A owns the Exclusive Rights In a Valid Copyright</u>.

PL&A has shown a proper renewal certificate for the Sales book and its exclusive license with the Dane family.  Hoffman Decl., ¶s 2-3, Exs. A, B.  Therefore, <u>summary judgment for PL&A on the issues of copyright ownership, standing, indispensable parties, and the optional notice requirement defenses is respectfully requested</u>.

Defendants, by going to the Dane family in 2003, among other times, with a proposed agreement acknowledging that PL&A has an exclusive license with the Dane family admitted that Plaintiff PL&A properly holds a valid copyright in the Sales book. Hoffman Decl., ¶s 4 and 18-19, Exs. L and M.  Specifically, BRIDGE, the U.S. publishing arm of the Scientology organizations, sought an assignment of the Dane family's rights in the 1993 exclusive license with PL&A, and inherently acknowledged that PL&A properly has the exclusive license.  Accordingly, the Defendants are estopped on this additional basis from challenging PL&A's exclusive rights, standing, or being the sole necessary plaintiff in this suit.  BRIDGE's admission is attributable to the remaining Scientology affiliated entities, for which BRIDGE would publish the material.  All the

-14-

entities are Scientology affiliated, Hoffman Decl., ¶s 20-21, Ex. O, and Mr. Schindler purported to act on behalf of BRIDGE, WISE and CSI, and thereby on behalf of all Scientology related entities. Hoffman Decl., ¶s 5-10, Exs. D and E.

C.   <u>Defendants' Courses on the Sales Book Infringe By Transforming the Sales Book Into a Course</u>.

Copyright infringement of a course which includes providing a copy of the Sales book, loaning the Sales book, and materials, regardless of their content, which direct the student to read certain portions of the Sales book, and then answer questions or perform drills with another person simulating sales techniques from the Sales book.

Here, Counts I and III of the First Amended Complaint are for copyright infringement by written materials prepared by WISE and CSI and used by Defendants, and are not the subject matter of the copyright infringement portion of this motion. Rather, Counts II and IV are. These counts are directed to the courses that include the Sales book, the cheeksheets with skills drills and simulation drills. The proof of copyright infringement is access to the work and substantial similarity. There can be no doubt that access to the work, the Sales book, exists because the Sales book is provided along with the course pack. Moreover, the checksheets and skills drills refer to the Sales book and interactively lead the student through the book. Hoffman Decl., ¶s 14 to 16 and Exs. H to J.

The courses violate PL&A's exclusive rights to make derivative works under 17 U.S.C. §106(2). There can be no doubt that the courses are "substantially similar" to the Sales book given that the courses include the Sales book and have no meaning without the Sales book.

The Copyright Act defines a "derivative work" as:

> a work based upon one or more preexisting works such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a **work may be recast, transformed, or adapted.** A work consisting of editorial revisions, **annotations, elaborations,** or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. §101 (emphasis added); <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1290 (11th Cir., 1999).

Scientology's courses are a transformation or adaptation of the Sales book. Each course includes the course materials which elaborate on portions of the Sales book. Moreover, the course materials interactively lead the student through the Sales book, telling the student what portions to read and providing the drills to reinforce and elaborate on the portions as read.

Case law shows that the courses constitute a transformation or adaptation of the Sales book so as to be an infringing derivative work.

The course inextricably is entangled with the Sales book and the materials, and cannot stand without the Sales book. In a closely analogous case, a manual created by defendants which was specifically made for use with plaintiff's textbooks was found to be an infringing derivative work. <u>Addison-Wesley Publishing Company, Inc. v. Brown,</u> 223 F. Supp. 219 (E.D. NY 1963). The copyright holder of physics textbooks which included exercises or problems sued Brown for infringement because Brown created a "manual" with similar exercises. The manual also contained solutions to the exercises, and a key to correlate the manual's exercises with the textbooks' exercises. The manual's prefatory note admitted this correlation:

'This manual contains the solutions to the problems in 'College Physics' and 'University Physics', Part II, by Sears and Zemansky.

'The chapter numbers in this manual correspond to those in the texts. However, a special notation is used for the problem numbers. For example: the number 6:4, appearing next to a specific problem, implies that the first number refers to problem 6 in 'College Physics', and the second number to problem 4 in 'University Physics'....

Addison-Wesley Publishing Company, Inc. v. Brown, 223 F. Supp. 219, 222 (E.D. NY 1963). There was no doubt that defendant had "access" to the copyright holder's textbooks because the manual acknowledged having correspondence to the textbooks. Moreover, the court had no trouble finding a "substantial similarity" or "derivative work" because the problems were specifically keyed to the problems in Sears and Zemansky. Id. The court observed that the solutions provided in the manual would be meaningless without the connection to the copyright holder's work:

The solutions, for their part, have no independent viability. Without appropriation of the exact dimensions and magnitudes stipulated, in their context of the postulates propounded in plaintiffs' problems, whatever the form or version into which defendants in their effort at disguise may have translated what they purloined, the solutions would exist in vacuo and be meaningless.

223 F. Supp. at 223-224.

The Ninth Circuit has also found that a transformation of the underlying work may occur by changing the context of the underlying work. In Mirage Editions, Inc. v.

17

Albuquerque A.R.T. Co., 856 F.2d 1341 (9th Cir. 1988), cert. denied, 489 U.S. 1018, 103 L. Ed. 2d 196, 109 S. Ct. 1135 (1989), the court held that removing reproductions of art works from "a compilation of selected copyrighted individual art works," and thereafter mounting those reproductions onto ceramic tile, resulted in the creation of derivative works and thus infringed.  Id. at 1343.

The Mirage case was criticized by a district court in Illinois and in Puerto Rico primarily because the mounting of artwork was akin to framing, which does not create a derivative work.  Lee v. Deck the Walls, Inc., 925 F. Supp. 576, 580-581 (N.D. Ill. 1996) Precious Moments, Inc. v. La Infantil, Inc., 971 F. Supp. 66 (Dist.P.R. 1997). Nevertheless, the Mirage case has been followed in the Ninth Circuit.  Greenwich Workshop, Inc. v. Timber Creations, Inc., 932 F. Supp. 1210 (C.D. Cal. 1996) (matting and framing artwork removed from copyrighted book constituted derivative work infringing copyright in book and artwork); Munoz v. Albuquerque A.R.T. Co., 829 F. Supp. 309 (D. Alaska 1993) (mounting individually sold notecards onto tiles created derivative works infringing copyright), aff'd, 38 F.3d 1218 (9th Cir. 1994).  The Mirage case has also been cited Twentieth Century Fox Film Corp. v. Marvel Enters., 155 F. Supp. 2d 1 (S.D.N.Y. 2001); Peker v. Masters Collection, 96 F. Supp. 2d 216, 220 (E.D.N.Y. 2000)(Court held painting onto a copyrighted print transformed the work and created a derivative work and cited Mirage case).  Paramount Pictures Corp. v. Video Broadcasting Systems, Inc., 724 F. Supp. 808, 821 (D.Ks. 1989)(Citing Mirage but distinguishing it because in the subject case the Defendant merely added an advertisement in front of a videotaped movie.)

The above cases clearly show that where the copyright holder's work is "framed" but the frame does not relate, add on or modify the work, there is no derivative work. When what is added to the copyrighted work interrelates with the copyrighted work, the copyright holder's rights to build or expand on his or her work are undermined. For example, in the Addison-Wesley case, one would expect the author of the textbook to have the right to provide a related work that builds on the textbook, i.e., answers to the questions in the textbook. In the Mirage case, whether one agrees or disagrees with the holding, the court considered it the copyright holder's right to permanently remount the pictures on tiles. Here, one would expect the copyright holder to have the right to build on the Sales book by producing a course with study materials that walk the student through portions of the book.

The Eleventh Circuit does not have a case on point. Undoubtedly, Defendants will cite Allison v. Vintage Sports Plaques, 136 F.3d 1443 (11th Cir. 1998). In that case, major league pitcher Orel Hirshisher and race car driver Bobby Allison's wife sued defendant Vintage for violation of the Alabama state law right of publicity, because Vintage put their baseball card and race car driver card in a plastic slot mounted on a wooden plaque. Allison and Hirshisher did not own the copyright in the cards. The Court held that the public would not think that the plaque, even when sold with a clock, was not being endorsed by the celebrity on the card. The card itself was removable and was not changed, and the plaque and card could exist without each other. The Court applied the first sale doctrine to the right of publicity.

By contrast, here, the Course materials and course cannot exist or be meaningful without the Sales book, and they build on the Sales book. It is not simply or figuratively

a frame around the book.  Rather, it is more like a frame where the defendant has painted on the frame in a way that continues the artwork on the frame.

A recent case from the Second Circuit shows how copyright protects the right to extend or build on the work by derivative work.  In Castle Rock Entertainment v. Carol Publishing Group, Inc., defendant created a trivia book with questions and answers about the renowned Seinfeld television show.  955 F. Supp. 260 (S.D.N.Y. 1997), affirmed, 150 F.3d 132 (2d Cir. 1998).  The district court granted **summary judgment** to Castle Rock on the copyright claim. It held that defendants had violated plaintiff's copyrights in Seinfeld and that such copying did not constitute fair use. Castle Rock Entertainment v. Carol Publishing Group, Inc., 955 F. Supp. 260, 274 (S.D.N.Y. 1997), affirmed, 150 F.3d 132 (2d Cir. 1998).


D.  The first sale defense, 17 U.S.C. §109(a), does not apply to a derivative work.

The first sale limitation of 17 U.S.C. §109(a) expressly is limited to the right of distribution under 17 U.S.C. §106(3).   Section 106 grants to the owner of a copyright five separate and distinct rights: (1) to reproduce the copyrighted work**, (2) to prepare derivative works based on the copyrighted work**, (3) to distribute copies of the copyrighted work to the public by sale, rental, etc., (4) to perform the copyrighted work publicly and (5) to display the copyrighted work publicly.

The first sale doctrine only provides that the copyright holder cannot control distribution beyond the first sale, but it does not provide a defense to other copyright exclusive rights, such as the right to make derivative works or the right of performance. United Artists Television, Inc. v. Fortnightly Corp., 377 F.2d 872, 882 (2d Cir. 1967).

Here, the copyright holder is not trying to control distribution.  Rather, the copyright holder seeks to stop creation of a derivative work.

## V. __CONCLUSION__

For the foregoing reasons, summary judgment as requested herein is proper and expeditious.

Dated:  March 31 , 2005

Respectfully submitted,

David L. Hoffman (adm. Pro hac vice 11/18/04)
LAW OFFICES OF DAVID L. HOFFMAN
27023 McBean Parkway, Suite 422
Valencia, California 91355
Tel. (661) 775-0300
Fax (661) 259-1255
dlhpatent@sbcglobal.net

MALIN, HALEY & DiMAGGIO, P.A.
Dale Paul DiMaggio
Florida Bar No. 395,803
dpd@mhdpatents.com
Joseph R. Englander
Florida Bar No. 935565
jre@mhdpatents.com
Local Counsel for Plaintiff
1936 South Andrews Ave.
Ft. Lauderdale, FL 33316

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **PLAINTIFF PETER LETTERESE AND ASSOCIATES, INC.'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF EXCLUSIVE RIGHTS AND COPYRIGHT INFRINGEMENT, AND INCORPORATED MEMORANDUM OF LAW** was caused to be personally served on ~~March~~ *April* 1, 2005 on the following counsel at the addresses as follows:

Helena K. Kobrin
Moxon & Kobrin
3055 Wilshire Blvd., Suite 900
Los Angeles, CA 90010        Fax: (213) 487-5385
*Attorneys for Defendants World Institute of Scientology Enterprises International, Inc., Bridge Publications, Inc., Church of Scientology Flag Service Organization, Church of Scientology Mission of Fort Lauderdale, Inc., Church of Scientology International, Inc. and Church of Scientology of Florida, and Scientology Missions International, Inc.*

Thomas Meeks
Zuckerman Spaeder LLP
201 South Biscayne Blvd., Suite 900
Miami, FL 33131        Fax: (305) 579-9749
*Attorneys for Defendants World Institute of Scientology Enterprises International, Inc., Bridge Publications, Inc., Church of Scientology Flag Service Organization, Church of Scientology Mission of Fort Lauderdale, Inc., and Church of Scientology of Florida, Church of Scientology International, Inc., and Scientology Missions International, Inc.*

Michael Nachwalter, Esq. and Elizabeth B. Honkonen, Esq.
Kenny Nachwalter, P.A.
1100 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131-4327        Fax: (305) 372-1861
*Attorneys for Defendant Religious Technology Center, Inc.*

On ~~March~~ *April* 1, 2005.

David L. Hoffman
Adm Pro Hac Vice Nov.18, 2004

LAW OFFICES OF DAVID L. HOFFMAN
27023 McBean Parkway, Ste. 422
Valencia, CA 91355
Tel: (661) 775-0300
Fax: (661) 259-1255